UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CURTIS L. THOMAS,

       Petitioner,

v.                                  Case No. 3:17-cv-1255-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

**ORDER**

**I. Status**

Petitioner Curtis Thomas, an inmate of the Florida penal system, initiated this action on November 6, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Thomas challenges a 2009 state court (Duval County, Florida) judgment of conviction for the sale or delivery of cocaine. Thomas raises two grounds for relief. See Petition at 4-12.[2] Respondents have submitted an answer in opposition to the Petition. See Answer in Response to Order to Show Cause (Response; Doc. 15) with exhibits (Resp. Ex.). Thomas filed a brief in reply. See Reply Brief to Respondents' Answer Brief Dated December 17th, 2018 is Timely Filed with this Court (Reply; Doc. 16). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On July 27, 2007, the State of Florida charged Thomas by way of Information with the sale or delivery of cocaine (count one) and resisting an officer without violence to his or her person (count two). Resp. Ex. A at 9. Following a trial, a jury found Thomas guilty as charged as to count one. Id. at 143. On December 10, 2009, the circuit court adjudicated Thomas to be a habitual felony offender and sentenced him to a term of incarceration of thirty years in prison. Id. at 172-77. The State nolle prossed count two. Resp. Ex. B at 222.

Thomas appealed his conviction and sentence to Florida's First District Court of Appeal. Resp. Ex. A at 183. In his initial brief, Thomas, with the assistance of counsel, argued that:  (1) the evidence was legally insufficient to overcome Thomas' reasonable hypothesis of innocence; and (2) the circuit court erred in denying Thomas' request to instruct the jury on possession of cocaine. Resp. Ex. F. The State filed an answer brief. Resp. Ex. G. On May 26, 2011, the First DCA affirmed per curiam the conviction and sentence and issued the Mandate on June 13, 2011. Resp. Ex. H.

On January 10, 2012, Thomas filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. I at 1-24. In the Rule 3.850 Motion, Thomas alleged his counsel was deficient for failing to: (1) request a subjective entrapment instruction; (2) object to improper closing arguments; (3) adequately argue a motion for judgment of acquittal; and (4) object to improper closing arguments. Id. On April 19, 2016, the circuit court denied relief on the motion. Id. at 254-65. On June 6, 2017, the First DCA affirmed per curiam the circuit court's denial of the Rule 3.850 Motion and on July 6, 2017, issued the Mandate. Resp. Ex. L.

2

### III. One-Year Limitations Period

The Petition was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Thomas's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief

3

functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable

4

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited

scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

> Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175
> L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination

of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners

whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16

(2013). "Federal courts may grant habeas relief only when a state court blundered in a

manner so 'well understood and comprehended in existing law' and 'was so lacking in

justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834

F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a

"difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

claims were adjudicated on the merits in the state courts, they must be evaluated under

28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of

counsel. That right is denied when a defense attorney's performance falls below an

objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521

(2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a
> conviction must show that "counsel's representation fell below
> an objective standard of reasonableness." [Strickland,] 466
> U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of

6

> ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly

> deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI.  Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Thomas alleges that his trial counsel was ineffective because she failed to request a subjective entrapment jury instruction and failed to call a witness, Crystal Woodard, to substantiate a subjective entrapment defense. Petition at 4-9. Thomas maintains that there was sufficient evidence at trial to warrant the reading of the subjective entrapment instruction. Id. at 5-7. According to Thomas, the evidence demonstrated that Ms. Woodard, a confidential informant, "begged" Thomas to sell her cocaine, which Thomas argues established the inducement element of subjective entrapment. Id. at 8. Additionally, Thomas contends that had counsel called Ms. Woodard

8

as a witness, she would have testified that police forced her to dial Thomas' number and

beg him to bring her cocaine or else the police would take her to jail on unrelated criminal

charges. Id.

Thomas raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. at

I at 3-10. In denying this claim, the circuit court explained, in pertinent part:

> Counsel testified at the evidentiary hearing that her defense strategy was to admit to, and request a jury instruction on, possession of cocaine to ensure Defendant would not be convicted of the more severe charged offense of Sale or Delivery of Cocaine. After the trial court declined the request for the possession instruction, noting possession was not a lesser included offense of the charged crime, counsel continued to trial, seeking to convince the jury the State could not prove the offense of Sale or Delivery of Cocaine beyond a reasonable doubt.
>
> Counsel testified she made this decision after researching potential defenses, including an entrapment defense, and determining that an entrapment defense was not the best option to pursue for Defendant. Counsel stated she did not request an instruction on entrapment, because that was not the defense they decided to pursue at trial.
>
> Importantly, counsel demonstrated she was aware of the elements of an entrapment defense and explained in detail why she chose not to pursue an entrapment defense. Counsel explained that, as to showing a government agent induced Defendant, she did not believe they had a strong case to show inducement based solely on Defendant's testimony that the confidential informant called him, asking him [to] bring drugs. First, counsel noted the officers testified they did not hear what the confidential informant said to Defendant on the telephone before he arrived. More importantly, however, counsel stated Defendant's version of inducement was not supported by the recording of Defendant's interaction with the officers once he arrived. Additionally, counsel testified that, even if the jury believed Defendant's testimony, she believed the confidential informant's simple request for drugs was not a strong argument for inducement.

Counsel further testified her larger reservations regarding the entrapment defense stemmed from the State's ability to show a predisposition of Defendant to sell drugs. Counsel recalled Defendant had a previous sale conviction, which the State would have been able to introduce to show his predisposition. Counsel further testified that during the recording of the instant offense, Defendant additionally offered to get more drugs for the officers, which counsel was concerned would make it more difficult for the jury to believe he did not have a predisposition. Lastly, counsel testified she discussed her concerns with Defendant and that he agreed with her defense strategy.

Therefore, this Court finds that counsel researched possible defenses and made a reasonable strategic choice to forego the entrapment defense and pursue another defense. See Occhichone, [sic] 768 So. 2d at 1048.[4] This Court further finds her decision not to request an instruction on entrapment reasonable as that was not the defense she and Defendant had agreed on pursuing at trial and, thus, her actions did not "negate the only defense put forth by trial counsel." See Mathis, 973 So. 2d at 1157.[5] Defendant is, therefore, not entitled to relief.

Id. at 258-59 (record citations omitted). The First DCA affirmed the denial of relief on this claim. Resp. Ex. L.

To the extent that the First DCA decided the claim on the merits,[6] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[4] Occhicone v. State, 768 So. 2d 1037 (Fla. 2000).
[5] Mathis v. State, 973 So. 2d 1153 (Fla. 1st DCA 2006).
[6] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Thomas is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. The Court notes that "[t]he Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second guessing of attorney performance are not permitted." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90)). Indeed, "[i]n assessing an attorney's performance under Strickland, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Strickland, 466 U.S. at 690). The Eleventh Circuit has explained that:

> Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998). The circuit court determined that counsel's actions were the product of a strategic decision. Resp. Ex. I at 258-59. Thomas has not provided clear and convincing evidence to overcome the state court's factual finding on this matter; therefore, the Court presumes for purposes of review that counsel's actions were strategic. See id.; 28 U.S.C. § 2254(e)(1).

11

Upon review of the record, the Court concludes that counsel's strategic decision was reasonable. In Florida, law enforcement commit entrapment:

> if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

§ 777.201(1), Fla. Stat. Florida recognizes two theories of entrapment, one being "'objective entrapment,' which concerns law enforcement conduct amounting to a denial of due process," and the other being "'subjective entrapment,' which focuses on whether the defendant was predisposed to commit the crime." Jones v. State, 114 So. 3d 1123, 1126 (Fla. 1st DCA 2013). Subjective entrapment is established through a three-part test:

> 1) "whether an agent of the government induced the accused to commit the offense charged[;]" 2) if so, "whether the accused was predisposed to commit the offense charged[;]" and 3) "whether the entrapment evaluation should be submitted to a jury."

State v. Laing, 182 So. 3d 812, 818-19 (Fla. 4th DCA 2016) (quoting Munoz v. State, 629 So. 2d 90, 99-100 (Fla. 1993)). A defendant must establish the first prong by a preponderance of the evidence, and a court should address the remaining prongs only after a defendant has established the first prong. Id. at 819. A defendant does not establish inducement by demonstrating law enforcement merely solicited or created opportunities to commit crimes. Senger v. State, 200 So. 3d 137, 144 (Fla. 5th DCA 2016) (quoting Marreel v. State, 841 So. 2d 600, 603 (Fla. 4th DCA 2003)). Instead, "[i]nducement is defined as including 'persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or

friendship.'" Rivera v. State, 180 So. 3d 1195, 1197 (Fla. 2d DCA 2015) (quoting State v. Henderson, 955 So. 2d 1193, 1195 (Fla. 4th DCA 2007)).

     The record reflects that two undercover officers, Detective Janes and Officer McCoy, set up a buy-bust operation in a motel room along with two confidential informants, Ms. Woodard and her husband, James Woodard. Resp. Ex. C at 31-32, 62-63. According to the undercover officers, Ms. Woodard would call known dealers and ask them to deliver drugs to the motel where they were located. Id. at 32, 47, 66. Both officers testified that Ms. Woodard went into the bathroom to make the call to Thomas and they were unable to hear the conversation. Id. at 48, 67. Several minutes after the call, Thomas was in their motel room. Id. at 33, 63. After a brief exchange with Ms. Woodard, Thomas began a conversation with the officers, which the officers recorded with surveillance cameras. Id. at 33-34, 49. Thomas asked the officers what they needed, and they responded that they wanted a "yard," slang for a $100 worth of crack cocaine. Id. at 33-34, 38, 63. Thomas replied that he had that amount on him and had another "yard" available for purchase. Id. at 33-34, 38-39, 63. Thomas placed one "yard" of crack cocaine on the entertainment center in the motel room and Officer McCoy handed Thomas $200 in marked bills, which Thomas took. Id. at 34, 63. Thereafter, the officers gave the takedown signal and arrested Thomas as he was walking back to his vehicle. Id. at 34-35, 64-65. Upon Thomas' arrest, officers located the $200 in marked bills on Thomas' person but did not find any additional drugs. Id. at 51, 55-56, 64-65, 68.

     Thomas testified at trial that Ms. Woodard called him and told him to meet her at the motel room and bring some drugs so they could get high and have sex. Id. at 88. When he arrived at the motel room, Ms. Woodard answered the door and then McCoy

started talking with him. Id. at 89. According to Thomas, McCoy asked him if he had drugs, to which Thomas replied in the affirmative. Id. at 89-90. Thomas then placed some crack cocaine on the entertainment center and McCoy handed him money, which Thomas accepted. Id. at 89-90, 98-99. Thomas maintained that he had no intent to sell drugs that day and did not tell McCoy he would sell him drugs, only that he could get McCoy drugs. Id. at 90. When McCoy handed Thomas the money, Thomas testified that it surprised him and he felt something was not right, so Thomas decided to leave. Id. at 90. Notably, Thomas stated that he did not have any additional crack cocaine but took the extra $100 because he was planning to steal it. Id. at 94.

Based on this record, Thomas could not have established inducement. The record does not support Thomas' assertion that Ms. Woodard's alleged representation that she wanted to get high and have sex with Thomas induced him to sell drugs to the officers, and Thomas has provided no evidence to substantiate this claim. According to Thomas, the video recording of the buy-bust, of which he does not have a copy, would exonerate him because it would include recordings of Ms. Woodard and the officers discussing framing Thomas. Petition at 7-8. However, the record reflects that the officers did not hear Ms. Woodard's telephone conversation, Resp. Ex. C at 48, 67, and had they heard anything inappropriate they would have immediately stopped the operation, id. at 69, 73. Moreover, counsel testified at the evidentiary hearing on the Rule 3.850 Motion that there was no recording of Ms. Woodard's phone call to Thomas. Resp. Ex. I at 55. Thomas has not presented evidence to rebut this record evidence. Therefore, his claim that the video recording would exonerate him is entirely speculative, particularly in light of the fact that Thomas alleges he has never seen the videos. Likewise, his claim that Ms. Woodard

would have testified in the manner Thomas alleges in the Petition is speculative and the record does not support it. Indeed, the video recording of the buy bust contradicts Thomas' version of events because it shows him specifically asking the undercover officers what they want and then supplying the officers with the requested amount and informing them he could get more. Nothing in the transcript of the recording played at trial suggests that the presence of the two men surprised Thomas or that Thomas was angry with Ms. Woodard  for misleading him. Vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). Accordingly, Thomas' unsupported, conclusory, and speculative assertion concerning Ms. Woodard's statement to him is insufficient to warrant federal habeas relief.

Moreover, even assuming Ms. Woodard  told Thomas to come over so they could get high and have sex, by the time Thomas arrived at the motel room, he would or should have realized that he was not going to get high or have sex with Ms. Woodard and that she was not the intended recipient of the crack cocaine. Yet despite this realization, Thomas still decided to sell the drugs to the officers. Accordingly, Thomas cannot demonstrate Ms. Woodard actually induced him to sell drugs to the undercover officers. See Cantrell v. State, 132 So. 3d 931, 932 (Fla. 1st DCA 2014), overruled on other grounds by Cantrell v. State, No. SC14-656, 2016 WL 1662960 (Fla. April 27, 2016) ("A mere invitation under false pretenses is not synonymous with inducement.").

Lastly, the Court notes that on the day of trial while the parties were handling matters before the jury entered, counsel represented that they intended to admit Thomas possessed cocaine but did not sell it. Resp. Ex. C at 8. The circuit court had a colloquy

15

with Thomas concerning this concession and Thomas agreed with counsel's decision to tell the jury Thomas possessed the cocaine. Id. at 9-10. Similarly, at the evidentiary hearing on the Rule 3.850 Motion, counsel testified that she had discussed the possibility of an entrapment defense and, after counsel reviewed the risks with Thomas, he told counsel he agreed with her decision not pursue it as a defense. Resp. Ex. I at 29-30. Among the risks counsel communicated to Thomas was that if they were able to prove inducement, that would open the door for the State to introduce Thomas' prior juvenile conviction for the sale of cocaine. Id. at 26-27. Additionally, counsel felt Thomas' conversations and interactions with the undercover officers that was recorded and played for the jury contradicted Thomas' version of events. Id. at 65-68. Based on these risks and weaknesses, counsel did not want to pursue a subjective entrapment defense. Id. at 28-29. The Court finds that counsel's decision not to pursue this defense was reasonable. Accordingly, in light of the foregoing, Thomas has failed to demonstrate deficient performance or prejudice; therefore, relief on his claim in Ground One is due to be denied.

### B. Ground Two

Thomas contends that his trial counsel was deficient for failing to adequately argue a motion for judgment of acquittal. Petition at 10-12. According to Thomas, the evidence at trial established that law enforcement officers subjectively entrapped him and that he had no predisposition to commit the crime charged. Id. at 11. Additionally, Thomas avers that counsel should have argued that the State failed to present evidence of an actual transaction. Id. Thomas maintains that had counsel argued these points as part of her motion for judgment of acquittal the circuit court would have granted the motion. Id. at 12.

In Thomas' Rule 3.850 Motion, he raised a similar claim. Resp. Ex. I at 16-21. The circuit court denied relief on this claim, explaining, in part:

> This Court acknowledges that while counsel moved for a judgment of acquittal after the State rested its case, she did not do so after the defense rested. To find Defendant guilty of the instant offense, the State had to prove that Defendant sold or delivered cocaine. To sell is defined as "to transfer or deliver something to another person in exchange for money or something of value or a promise of money or something of value." Delivery is "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."
>
> Accepting all facts presented by the State as true, the trial court would have had sufficient evidence to determine that the jury could find Defendant committed the instant offense, and thus, deny a motion for judgment of acquittal. Two employees of the Jacksonville Sheriff's Office ("JSO"), Detective Williams Janes ("Detective Janes") and Officer McCoy, testified that they were present during the commission of the alleged offense. Both law enforcement officers testified that their confidential informant called Defendant to order drugs, and that Defendant showed up in response and provided them with cocaine in exchange for 200 dollars of JSO funds. A third JSO employee, Sergeant Jennifer Short, identified Defendant as the individual she arrested after the drug deal was completed. Moreover, at trial, the State presented the controlled substance collected on the day of Defendant's arrest and presented a crime laboratory analyst who testified that the substance was cocaine. The State further presented a videotaped recording of the commission of the offense, in which Defendant can be seen providing cocaine and receiving money. This Court, therefore, finds there was sufficient evidence to convict Defendant of Sale or Delivery of Cocaine, and that any motion for judgment of acquittal would have been denied.
>
> Additionally, in Defendant's Reply to the State's Response, Defendant repeatedly mentions counsel's failure to move for judgment of acquittal also failed [sic] to preserve the issue for appeal. This Court notes that the "failure to preserve issues for appeal does not show the necessary prejudice under Strickland." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). In Strobridge, the appellate

> court found "the only prejudice asserted was prejudice in the [defense attorney's] failure to preserve the issue for appeal and not any prejudice occurring at the trial itself." Id. at 1243; [s]ee Carattelli v. State, 961 So. 2d 312, 323 (Fla. 2007) (holding that a defendant must demonstrate prejudice at trial, not on appeal.). The "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Strickland, 466 U.S. at 670 (emphasis added). Defendant's argument does not challenge the result of his conviction, but instead addresses the effect counsel's performance had on an appeal. Thus, Defendant does not demonstrate prejudice at trial and fails to meet the second prong of Strickland. Accordingly, counsel was not ineffective, and Defendant is not entitled to relief on this ground.

Id. at 262-63 (record citations and footnote omitted). The First DCA affirmed the circuit court's denial of relief on this claim. Resp. Ex. L.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thomas is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim is meritless. In ruling on a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d

323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). At the close of the State's case in chief, the State had presented unrebutted evidence that Thomas delivered crack cocaine to undercover officers and accepted payment for the same, all of which was videotaped. The State did not introduce any evidence that would have demonstrated inducement. Therefore, any motion for judgment of acquittal on the grounds of subjective entrapment would have been meritless. Likewise, as explained in greater detail in the Court's analysis of Ground One above, even if counsel had moved for a judgment of acquittal at the close of the defense's case it would not have been successful because Thomas' testimony did not demonstrate inducement. As such, a motion for judgment of acquittal at the close of the defense's case would have also been without merit. Counsel cannot be deemed deficient for failing to raise meritless arguments. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). As such, the claim for relief in Ground Two is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Thomas seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a

19

constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Thomas "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Thomas appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is

not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of October, 2020.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:     Curtis L. Thomas #J22196
        Jennifer J. Moore, Esq.